IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| AMY SOLEN, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| HOPEBRIDGE, LLC | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Amy Solen ("Plaintiff"), by and through undersigned counsel, and files this, her Complaint against Defendant Hopebridge, LLC's ("Defendant"), and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages and reasonable attorney fees for Defendant's violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117 and 12203.

3.

The unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), as incorporated in 42 U.S.C. § 12117(a), venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a resident of the State of Georgia and a citizen of the United States of America and is entitled to bring actions of this kind and nature.

5.

Defendant Hopebridge, LLC is a foreign limited liability corporation licensed to do business in Georgia which may be served pursuant to Rule 4 of the Federal Rules of Civil Procedure through its registered agent for service of process, URS Agents, LLC (CA), 3675 Crestwood Parkway, Suite 350, Duluth, GA, 30096.

## ADMINISTRATIVE PROCEDURES

### 6.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on March 26, 2020. Defendant had notice of the Charge and an opportunity to participate in the investigation and conciliation of the Charge and did in fact participate in the investigation of the Charge.

### 7.

The EEOC issued a "Notice of Right to Sue" on April 22, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

### 8.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue".

## FACTUAL ALLEGATIONS

### 9.

Defendant is now and at all times during the period of Plaintiff's employment and thereafter has been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 1211(5)(a) and 15 or more employees for each working day in each of 20 or more calendar weeks in the 2019 or 2018 calendar year.

10.

Defendant has employed more than 500 employees in each of 20 or more calendar weeks in the 2018 or 2019 calendar years.

11.

Defendant's annual revenues exceed $40,000,000.

12.

Defendant was thus able to grant the accommodation requested by Plaintiff.

13.

Plaintiff was hired by Defendant on September 9, 2019 as a Board Certified Behavior Analyst.

14.

After she was hired, Plaintiff disclosed to Trent Goode, the Center Manager, as well as Registered Behavior Technicians then working at the Center, that she suffers from primary immunodeficiency, which requires Plaintiff to have regular infusions of Hizentra, that requires her to have regular appointments with an immunologist for treatments that present cost over $18,000 per month.

15.

Plaintiff discussed the precautions she needed to exercise in order to manage the risks associated with her disability.

16.

As part of her discussions about these precautions, she had numerous conversations with Mr. Goode regarding her concerns about children being in the clinic with fevers or other symptoms indicating that they suffered from contagious disease.

17.

Mr. Goode represented to Plaintiff that it had a policy of not permitting children with contagious diseases to be present at the Center, which policy was contained in patient packets and on a flyer hung in the lobby.

18.

However, it readily became apparent that this policy was not followed, as numerous children were ill, with fevers, and very few children were sent home.

19.

Some children were so ill that they merely slept through the day while they were supposed to be receiving services.

20.

Plaintiff disclosed this on-going violation of policy to the then Regional Center Manager, Stacy Scarrette.

21.

During this same period, Mr. Goode reinstated from suspension a Registered Behavior Technician who had been sent home for striking one of the three-year-old patients at the Center.

22.

On November 11, 2019, due to the failure to enforce the policy against permitting contagious children to remain at the Clinic, the fraudulent practice alleged above and because Mr. Goode had reinstated the Registered Behavior Technician who had struck a three-year-old patient at the Center, Plaintiff told Mr. Goode and other members of the staff that, unless things changed, her last day would be November 22, 2019.

23.

On November 11, 2019, Plaintiff also reported Mr. Goode to Defendant's corporate compliance officer for requiring Karina Massey to prepare fraudulent billing notes and instructing Plaintiff to sign off on fraudulent billing notes, so that they could be used for billing purposes.

24.

On the evening of November 11, 2019, the Regional Center Manager, Stacy Scarrette and informed her of the preceding facts.  Ms. Scarrette reassured that the issues she had reported would be taken seriously and changes would be made.

25.

Ms. Scarrette asked Plaintiff to rescind her verbal resignation and Plaintiff agreed.

26.

Subsequently, despite Plaintiff's stated concerns and notwithstanding the stated "no contagious children" policy, on November 18, 2019, Plaintiff was informed by an RBT named Kelsey that a child was dropped off at the Center by his mother with an oozing, pustulant sore on the back of his leg and had a prescription antibiotic cream which she recognized as one used to treat staph infections.

27.

Plaintiff attempted to reach the child's mother several times, without success.

28.

Plaintiff then contacted the pharmacist who filled the prescription and the pharmacist stated that it was prescribed for bacterial infections such as staph.  The

pharmacist confirmed that the infection was contagious, given the nature of the medication.

29.

Kelsey contacted Plaintiff and informed her that Mr. Goode had informed her merely to use good handwashing protocols while changing the child's diaper.  She also reported that the child had stuck his hands in the infected sore and wiped the pus on Kelsey's face and ear.

30.

The child's mother then contacted Plaintiff via telephone.  Plaintiff asked about the child's condition, which the mother described as a "boil."  The mother did not know what kind of infection the child had and, on further questioning, admitted that she did not have a note from the doctor stating that the child could safely be in the Clinic without risk of infection staff and other patients.

31.

Plaintiff then checked online and found a scholarly article written by infectious disease professionals that stated that "A boil, also known as a furuncle, is a bacterial infection involving the perifolligular tissue that usually originates from pre-existing folliculitis."  It also stated that "Staphylococcus aureus is the most common pathogen of folliculitis and boils."  See Lin, H. S., Lin, P. T., Tsai, Y. S.,

Wang, S. H., & Chi, C. C. (2018). Interventions for bacterial folliculitis and boils (furuncles and carbuncles). The Cochrane Database of Systematic Reviews, 2018(8), CD013099. https://doi.org/10.1002/14651858.CD013099.

32.

Plaintiff informed Mr. Goode and Oascha, the Regional BCBA, that, because of her disability, if she were to become infected, it could be fatal.  She requested that another BCBA provide oversight, unless the child were sent home as required by policy.

33.

Plaintiff was then fired and escorted from the building.

## CLAIMS FOR RELIEF

## COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

34.

Plaintiff re-alleges paragraphs 9-33 as if set forth fully herein.

35.

Plaintiff has a physical impairment  and a record of such an impairment which substantially limits one or more major life activities, i.e., a major bodily function, including but not limited to, functions of the immune system.

36.

Plaintiff's impairment is a disability within the meaning of the ADA, as amended.

37.

Defendant was aware of Plaintiff's disability.

38.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

39.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

40.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

41.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

42.

Defendant terminated Plaintiff's employment because of her disability and her requests for accommodations.

43.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

44.

Although Defendant claims that Plaintiff resigned, this statement is false and a pretext for disability discrimination.

45.

Defendant treated other employees outside Plaintiff's protected class differently.

46.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

47.

Defendant, including upper management officials of Defendant, has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

48.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

49.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

50.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

51.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages,

equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

52.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

53.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

54.

Plaintiff re-alleges paragraphs 9-33 as if set forth fully herein.

55.

Plaintiff has a physical impaiment  and a record of such an impairment which substantially limits one or more major life activities, i.e., a  major bodily function, including but not limited to, functions of the immune system.

56.

Plaintiff's impairment is a disability within the meaning of the ADA, as amended.

57.

Defendant was aware of Plaintiff's disability.

58.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

59.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

60.

Plaintiff requested that Defendant accommodate her disability by enforcing its own policies against permitting contagious children to be at the Clinic where she was employed or by permitting her to avoid exposure to the child with the contagious infection.

61.

Upon receiving Plaintiff's request for an accommodation, Defendant failed to meaningfully engage in the interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability and, instead, fired her.

62.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

63.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

64.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

65.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

66.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

67.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

68.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

69.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

70.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

71.

Plaintiff re-alleges paragraphs 9-33 as if set forth fully herein.

72.

Plaintiff has a physical impairment  and a record of such an impairment which substantially limits one or more major life activities, i.e., a  major bodily function, including but not limited to, functions of the immune system.

73.

Plaintiff's impairment is a disability within the meaning of the ADA, as amended.

74.

Defendant was aware of Plaintiff's disability.

75.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

76.

Defendant terminated Plaintiff for requesting an accommodation for her disability.

77.

Plaintiff's request for an accommodation of her disability constitutes protected conduct under the ADA, as amended.

78.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

79.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests, i.e., immediately (within seconds or minutes) after she made the request.

80.

Defendant's claim that Plaintiff resigned her employment is a pretext designed to hide Defendant's retaliatory motive.

81.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

82.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

83.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

84.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

85.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

86.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)     Special damages for lost wages and benefits and prejudgment interest thereon;

(d)     Reasonable attorney's fees and expenses of litigation;

(e)     Trial by jury as to all issues;

(f)     Prejudgment interest at the rate allowed by law;

(g)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)        Injunctive relief of reinstatement, or front pay in lieu thereof, and

prohibiting Defendant from further unlawful conduct of the type

described herein; and

(i)        All other relief to which she may be entitled.


Respectfully submitted the 15th day of June, 2021.

**BARRETT & FARAHANY**

 /s *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
Catherine Gavrilidis
Georgia Bar No. 565343

*Attorney for Plaintiff Amy Solen*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
matt@justiceatwork.com
catherine@justiceatwork.com